IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HASSELL FREE PLUMBING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:20-CV-1712-K |
| | § | |
| MICHAEL B. WHEELER d/b/a | § | |
| HASSLE FREE PLUMBING, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Hassell Free Plumbing, LLC's Amended Combined Request for Clerks [sic] Entry of Default and Motion for Default Judgment (Doc. No. 22) and Brief in Support (Doc. No. 23) (the "Motion"), filed on February 26, 2021, against Defendant Michael B. Wheeler d/b/a/ Hassle Free Plumbing. After careful consideration of the Motion, the supporting appendix, the relevant portions of the record, and the applicable law, the Court **GRANTS** the Motion.

**I. Factual and Procedural Background**

On June 6, 2020, Plaintiff Hassell Free Plumbing, LLC ("Plaintiff") initiated this action against Defendant Michael B. Wheeler d/b/a/ Hassle Free Plumbing ("Defendant"), alleging a federal claim under the Lanham Act and state claims, including trademark infringement, unfair competition, and trademark dilution. Doc. No. 1. Plaintiff has since abandoned its dilution of trademark rights claim. Doc. No. 22 at 1.

Plaintiff has owned and operated its plumbing business since at least December 31, 1987 and has used the HASSELL FREE PLUMBING mark in connection with its plumbing services continuously the entire time. Doc. No. 1 at 2-3; Doc. No. 23 at 7. Plaintiff's HASSELL FREE PLUMBING trademark was registered with the Texas Secretary of State's Office on May 11, 2020 and has the Texas trademark Registration Number 803590242. Doc. No. 11-3, Ex. 2 at 1-2.

Defendant has been using the HASSLE FREE PLUMBING mark since at least July 3, 2019. Doc. No. 1 at 3-4; Doc. No. 1-5, Ex. 3; Doc. 2-7, Ex. 5. Defendant's mark is phonetically identical to Plaintiff's trademark and both businesses are associated with plumbing services. By way of exhibits and affidavits, Plaintiff presented evidence of actual customer confusion between Defendant and Plaintiff because of Defendant's mark. Doc. No. 1 at 4-5, ¶¶ 14-17; Doc 1-12, Ex. 10 at 2-6, ¶¶ 5-14; Doc. No. 11-4, Ex. 3 at 1-5, ¶¶ 6-16.

Defendant has failed to answer or otherwise respond to the Complaint. Plaintiff filed its Amended Combined Request for the Clerks [sic] Entry of Default and Motion for Default Judgment (Doc. No. 22) and Brief in Support (Doc. No. 23). On March 1, 2021, the Clerk of the Court entered default against Defendant. Doc. No. 24. Because the Clerk found Defendant in default, the Court's determination of whether entry of a default judgment should follow is ripe for consideration. Once the procedural prerequisites for entering default judgment are met, the Court may consider the request for a permanent injunction and reasonable attorneys' fees and costs.

## II. Legal Standard

Federal Rule of Civil Procedure 55 governs applications for default and default judgment. FED. R. CIV. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* (citing FED. R. CIV. P. 55(a)). After the entry of default, a plaintiff may apply to the court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister,* 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (4th ed.)). A default judgment "must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The well-pleaded allegations in the complaint are assumed to be true. *Nishimatsu*, 515 F.2d at 1206.

In determining whether a default judgment should be entered, the Court considers (1) whether the entry of default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) the relief,

if any, to which the plaintiff is entitled. *MetroPCS v. Mohammed*, No. 3:16-CV-1946-L-BK, 2017 WL 2590108, at *2 (N.D. Tex. Apr. 24, 2017), *report and recommendation adopted,* No. 3:16-CV-1946-L, 2017 WL 2579040 (N.D. Tex. June 14, 2017) (Lindsay, J.) (citing *United States v. 1998 Freightliner*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008)).

The Fifth Circuit looks to the following six factors in determining whether default judgment is procedurally warranted: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (2d ed. 1983)).

## III. Analysis

### A. Entry of Default

In deciding whether a default judgment is appropriate, the Court considers each of the six *Lindsey* factors described above. Here, there are no material issues of fact; rather, due to the default posture of this case, the Court takes Plaintiff's allegations as against Defendant as true. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-CV-1889-M, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) (Lynn,

C.J.). There is no substantial prejudice against Defendant. Defendant was properly served (Doc. Nos. 6 & 9), the grounds for default against Defendant were clearly established, and the Clerk properly entered default against Defendant. Entering default judgment against a defendant, who has taken no action to respond to a suit, is not "harsh." *See Joe Hand*, 2017 WL 373478, at *2 (citing *Lindsey*, 161 F.3d at 893). Defendants had over eight months to respond to Plaintiff's Complaint or otherwise appear in this case, which mitigates the harshness of a default judgment. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.). Further, the Court is aware of no facts that would cause it to set aside the default judgment should Defendant challenge it. Accordingly, the Court finds that the procedural requirements for entering default judgment are satisfied.

### B. Sufficiency of the Pleadings

Before default judgment may be entered, the Court must assess the merits of Plaintiff's claims and the sufficiency of the Complaint. *Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). Plaintiff claims that Defendant committed trademark infringement under federal law and Texas common law and engaged in unfair competition under Texas common law. Doc. No. 1 at 6-9; Doc. No. 23 at 6. As previously mentioned, Plaintiff abandoned its dilution of trademark rights claim. Doc. No. 23 at 6.

Taking the factual allegations in the Complaint and exhibits as true, the Court finds that Defendant is liable for federal trademark infringement under Section 43(a) of the Lanham Act, Texas common law trademark infringement, and Texas common law unfair competition.

To succeed in a trademark infringement claim under the Lanham Act, Plaintiff must first "establish ownership in a legally protectible mark, and second . . . show infringement by demonstrating a likelihood of confusion." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2010) (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008) and citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).

### 1.  Possession of a Legally Protectable Trademark

Plaintiff argues that (1) it has a Texas trademark registration for HASSELL FREE PLUMBING under Registration Number 803590242 (Doc. No. 11-3, Ex. 2 at 1-2); (2) it has used the mark in commerce since at least 1987 (Doc. No. 1 at 2-3, ¶¶ 7-11); and (3) its mark is entitled to protection from infringement by junior users because its degree of distinctiveness is suggestive (Doc. No. 23 at 20).

Like a federal trademark, a Texas trademark registration creates a statutory presumption of validity, which courts have recognized. *See, e.g.*, *Gorgeous Gals, LLC v. Hey Gorgeous! Spa & Wellness, LLC*, No. 1:16-CV-903-RP, 2017 WL 5016036, at *2 (W.D. Tex. Nov. 2, 2017) (finding "that a presumption of validity applies to the [Texas] registered mark because (1) the statutory language of Section §

6

16.060(c)(1) exactly tracks the language of the former provision, Section 16.15(c)(1), with respect to validity; and (2) the Fifth Circuit confirmed a presumption of validity exists under the former provision" in *Igloo Products Corporation v. Brantex, Inc.*, 202 F.3d 814, 818 (5th Cir. 2000)).

While registration of a mark is prima facie evidence of a registrant's ownership of the mark, "[o]wnership of trademarks is established by use, not by registration." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990) (citations omitted). "The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion." *Id.*

Here, Plaintiff owns the registered Texas trademark Registration Number 803590242, which carries with it a presumption of validity and ownership. Doc. No. 11-3, Ex. 2 at 1-2. Notably, Plaintiff did not register the mark until after Defendant started using the HASSLE FREE PLUMBING mark. Nonetheless, the evidence shows that Plaintiff has continually used its HASSELL FREE PLUMBING mark in commerce for its plumbing services since at least 1987 (Doc. No. 1 at 2-3., ¶¶ 7-11), while Defendant has only been using the HASSLE FREE PLUMBING mark for its plumbing services since at least July 3, 2019 (Doc. No. 1 at 3-4, ¶¶ 12-13). Therefore, Plaintiff's mark has seniority over Defendant's mark.

A mark is protectable if it is either (1) inherently distinctive, or (2) has become distinctive through a secondary meaning. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Marks are assigned to "categories of generally increasing distinctiveness": (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Id.* at 768. "A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." *Amazing Spaces*, 608 F.3d at 241 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790-91 (5th Cir. 1983), *abrogated on other grounds by KB Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)). "A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Id.* "Arbitrary or fanciful terms bear no relationship to the products or services to which they are applied." *Id.* "A suggestive term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services." *Id.*

Suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection," while "[g]eneric terms receive no trademark protection, [and] descriptive terms merit protection only if they have secondary meaning." *Xtreme Lashes*, 576 F.3d at 227 (citing *Two Pesos*, 505 U.S. at 768-69).

Plaintiff's HASSELL FREE PLUMBING mark is not generic because the mark connotes individualized characteristics of Plaintiff's plumbing services, namely by using the owner's last name, Hassell, in the mark as a play on words for the hassle-free nature of Plaintiff's plumbing services. Plaintiff's mark is not arbitrary or fanciful because it includes the word "plumbing," which shows relationship to the services Plaintiff provides. It is a closer call on whether the mark is descriptive or suggestive.

"One test that [the Fifth Circuit] employ[s] to distinguish between descriptive and suggestive terms is the 'imagination test,' which 'seeks to measure the relationship between the actual words of the mark and the product to which they are applied.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 452 (5th Cir. 2017) (citing *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 539 (5th Cir. 2015)). "If a word requires imagination to apply it to the product or service in question, it tends to show that the term as used is suggestive. On the other hand, if the word conveys information about the product, it is descriptive." *Id.*

Plaintiff argues that the HASSELL FREE PLUMBING mark is suggestive because the "Hassell Free" term is a play on words with the owner's last name, which in the context of plumbing services, conveys there will no hassle when using Plaintiff's services and also conveys who owns the company by using the owner's last name. Plaintiff contends, and the Court agrees, that the mark is suggestive, requiring imagination to realize that "Hassell" is a play on the word "hassle". Because the mark

9

is suggestive, it is inherently distinctive and entitled to protection. The Court need not determine whether the mark has a secondary meaning.

Given that Plaintiff's mark is registered in Texas, has seniority over Defendant's mark, and is inherently distinctive accordingly to the foregoing analysis, the Court finds that Plaintiff has a legally protectable right in the HASSELL FREE PLUMBING mark.

## 2. Likelihood of Confusion

With respect to the second element of trademark infringement under the Lanham Act, the Fifth Circuit considers the following factors, or "digits of confusion", in determining whether a likelihood of confusion has resulted: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc.*, 518 F.3d at 329 (quoting *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986) (quotations marks omitted)). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Id.* (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)) (quotations marks omitted).

Plaintiff has shown a likelihood of confusion. To show the strength of its HASSELL FREE PLUMBING trademark, Plaintiff argues, and this Court has already found, that the mark is suggestive. In support of the mark's strength and enduring use

in commerce, Plaintiff points to the nonstandard spelling and play off the owner's last name and cites that Plaintiff has used the mark in commerce since 1987. Doc. No. 23 at 14; Doc. No. 1 at 2-3, ¶¶ 7-11. Plaintiff supports its allegation that Defendant's HASSLE FREE PLUMBING mark is similar to Plaintiff's HASSELL FREE PLUMBING mark by explaining that the Defendant's mark is the phonetic equivalent and spelled almost the exact same way. Doc. No. 1 at 3-4, ¶¶ 12-13. Plaintiff provides evidence showing that Defendant uses its mark to offer plumbing services, just like Plaintiff. Doc. No. 1 at 3-4, ¶¶ 12-13. Plaintiff alleges that Defendant and itself use their marks to offer services to the same consumers because they are competitors in the same general area and customers have actually confused the two plumbing providers. Doc. No. 1 at 3-4, ¶¶ 12-13; Doc. No. 11-4, Ex. 3 at 1-5, ¶¶ 6-16. Plaintiff asserts that Defendant and itself advertise on the same media, primarily over the Internet and through third-party recommendation services. Doc. No. 1 at 2-4, ¶¶ 7-13. Further, Plaintiff alleges, through an affidavit, that Defendant stated he knew Plaintiff used the HASSELL FREE PLUMBING mark before Defendant adopted the HASSLE FREE PLUMBING mark and that Defendant chose to continue using its mark despite customer confusion. Doc. No. 11-4, Ex. 3 at 5, ¶ 16. Importantly, Plaintiff provided several examples of consumer confusion, citing to instances in which customers contacted Plaintiff to complain about Defendant's services or accidentally solicited Defendant when they were seeking Plaintiff's plumbing services. Doc. No. 1 at 4-5, ¶¶ 14-17; Doc 1-12, Ex. 10 at 2-6, ¶¶ 5-14; Doc. No. 11-4, Ex. 3 at 1-5, ¶¶ 6-16.

Accordingly, the Court finds that the evidence provided weighs in favor of a likelihood of confusion caused by Defendant's use of the HASSLE FREE PLUMBING mark.

Because Plaintiff has demonstrated that it owns a legally protectable mark and that Defendant's alleged trademark infringement created a likelihood of confusion, the Court finds that Defendant has unlawfully infringed on Plaintiff's trademark in violation of the Lanham Act.

Plaintiff's Texas common law claims for trademark infringement and unfair competition are evaluated under the same elements as trademark infringement under the Lanham Act. *Amazing Spaces*, 608 F.3d at 236 n.7 ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (internal quotation marks and citation omitted)). Because Defendant is liable for Plaintiff's trademark infringement claim under the Lanham Act, Defendant is also liable for Plaintiff's Texas common law claims for trademark infringement and unfair competition.

Accordingly, the Court finds that Plaintiff has sufficiently supported its allegations as to its claim for trademark infringement under Section 43(a) of the Lanham Act and its Texas common law claims for trademark infringement and unfair competition.

### B. Remedies

Next, the Court determines whether it is appropriate to award Plaintiff the remedies requested in its Motion upon the entry of default judgment. "A default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Therefore, the relief prayed for in a Plaintiff's Complaint limits the relief available on default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975). Because the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, the Court will now determine whether such relief is appropriate based on the governing law.

### 1. Attorneys' Fees and Costs

Under the Lanham Act, a court has discretion to award reasonable attorneys' fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). According to the Fifth Circuit, "the exceptional case is one in which the defendant's trademark infringement can be characterized as 'malicious,' 'fraudulent,' deliberate,' or 'willful.'" *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). Essentially, the plaintiff must show that the defendant acted in bad faith and possessed a "high degree of culpability." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002) (citation omitted). A defendant's acts are willful "if he knows his actions constitute an infringement; the actions need not have been malicious. Infringement can also be willful where a defendant acted with 'reckless disregard' for or 'willful blindness' to the rights of a [plaintiff]." *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 767 (N.D. Tex. 2013) (Lynn, J.) (citations omitted).

Here, the Court finds that Plaintiff should be awarded reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Defendant acted with reckless disregard or willful

blindness, which constitutes willful infringement. *See S & H Indus., Inc.*, 932 F. Supp. 2d at 767. According to the affidavit of Sandi Hassell, an owner of Hassell Free Plumbing, LLC, Defendant called Sandi Hassell after being served with this lawsuit. Doc. No. 11-4, Ex. 3 at 5, ¶ 16. Defendant made statements to Sandi Hassell representing that he knew some of her family members that previously worked for Hassell Free Plumbing, LLC, that he was in the same geographic area, that he was aware that HASSLE FREE PLUMBING mark was confusingly similar to the HASSELL FREE PLUMBING mark, and that he thought Hassell Free Plumbing, LLC had moved to California or closed up shop. *Id.* Defendant told Sandi Hassell that he thought the HASSELL FREE PLUMBING mark had been abandoned and that he did not attempt to verify this before adopting the HASSLE FREE PLUMBING mark. *Id.* The Court considers this uncontroverted evidence as true in determining whether Defendant acted with reckless disregard or willful blindness. Given that Defendant represented that he knew about the HASSELL FREE PLUMBING mark before adopting the HASSLE FREE PLUMBING mark and that he did not attempt to verify whether Hassell Free Plumbing, LLC had moved to California or abandoned the HASSELL FREE PLUMBING mark, the Court finds that Defendant's infringement was willful.

Therefore, the Court finds that Plaintiff is entitled to reasonable attorneys' fees as well as costs of the action as authorized by 15 U.S.C. § 1117. The Court permits Plaintiff to recover a reasonable amount to be determined pursuant to Federal Rule of Civil Procedure 54(d)(2). At this time, the Court does not have sufficient information

to determine the specific amount of reasonable attorneys' fees to be awarded. A motion for reasonable attorneys' fees by Plaintiff shall be filed **no later than fourteen (14) days after the date of this order**, and shall include an affidavit from its counsel setting out the details that establish a reasonable calculation of attorneys' fees, and such other evidence establishing proof under the Fifth Circuit's standards.

### 2. Permanent Injunction

Plaintiff requests that the Court enter a permanent injunction, enjoining Defendant from infringing on Plaintiff's trademark. The Court must now consider whether a permanent injunction is an appropriate remedy. Under 15 U.S.C. § 1116(a), the Court has the power to grant a permanent injunction when a defendant violates the Lanham Act. To obtain a permanent injunction, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds that a permanent injunction is appropriate in light of the following. As previously explained, the Court finds actual success on the merits—i.e. Defendant is liable for federal trademark infringement under the Lanham Act and Texas common law trademark infringement and unfair competition. Plaintiff has shown that it has suffered an irreparable harm to its reputation and trademark because

of consumer confusion between the marks. Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendant. Requiring Defendant to refrain from future infringement will cause him minimal to no harm. Any potential harm caused by requiring him to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted. Finally, an injunction would serve the public interest by promoting compliance with trademark law. Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment.

IT IS THEREFORE ORDERED that Plaintiff's motion for default judgment be, and hereby is, GRANTED; and it is further ORDERED, ADJUDGED, and DECREED that:

1. Defendant was properly served but failed to timely answer or formally appear in this lawsuit.

2. Plaintiff completely owns and has rights in the HASSELL FREE PLUMBING common law trademark and the HASSLE FREE PLUMBING common law trademark.

3. Defendant willfully infringed Plaintiff's trademark rights by using without authorization the HASSLE FREE PLUMBING mark in connection with the offer of plumbing services.

4. This case is an exceptional case because of Defendant's willful blindness and Plaintiff is entitled to reasonable attorney's fees in the amount to be determined by the Court in a separate order.

5. Plaintiff is entitled to recover its reasonable costs in the amount to be determined by the court in a separate order.

6. Defendant shall immediately discontinue using the Internet Web site addresses or domain name *www.hasslefreeplumber.com* ("Website").

7. Plaintiff is entitled to receive ownership of the Website; or, in the alternative, the registrar for the Website shall delist the Website and remove its registration so that it may no longer be accessed by the general public.

8. Defendant shall immediately discontinue using the Hasslefreeplumber Facebook Account and *hasslefreeplumber@gmail.com* email accounts (collectively, the "Social Media Accounts").

9. Plaintiff is entitled to receive full control of the Social Media Accounts; or, in the alternative, the appropriate entity—e.g., Facebook or Google—for the corresponding Social Media Accounts should delete the corresponding Social Media Account so that they may no longer be engaged by the general public.

10. Defendant shall immediately discontinue using the 469-338-6506 and 469-707-3011 phone numbers (collectively, the "Phone Numbers") in association with the offer of plumbing services.

11. Plaintiff is entitled to receive full control of the Phone Numbers; or, in the alternative, the Phone Numbers are required to play a message stating that the entity is not affiliated with Plaintiff when the call goes to voice mail or recording.

12. All third party entities shall delete, remove, and/or delist all references, connections, links, contact info, advertisements, and profiles for Defendant featuring the infringing HASSLE FREE PLUMBING mark on their websites or domains, including but not limited to Google (google.com), Facebook (facebook.com), Pinterest (pinterest.com), Yahoo! (yahoo.com), manta (manta.com), yelp (yelp.com), yp (yellowpages.com), Angie's List (angieslist.com), houzz (houzz.com), networx (networx.com), mapquest (mapquest.com), buildzoom (buildzoom.com), and homeadvisor (homeadvisor.com), Chamber of Commerce (chamberofcomerce.com), houzz" (houzz.com), "networx" (networx.com), "buildzoom" (buildzoom.com), "homeadvisor" (homeadvisor.com).

IT IS THEREFORE FURTHER ORDERED that:

Effective immediately, Defendant, its agents, servants, employees, officers, independent contractors, attorneys, successors and assigns, and such affiliated entities as Defendant directly or indirectly owns or controls ("Enjoined Parties"), and those acting in active concert with any of them, hereby are immediately and permanently enjoined as follows:

1.    The Enjoined Parties shall not

   a.  include or seek to include the HASSLE FREE mark in any marketing campaign that promotes, advertises, markets, sales, offers or associates with the offer of plumbing services or equivalent services or products;

   b.  affix the HASSLE FREE mark to any physical object that has the potential to be viewed by the public, including but not limited to, billboards, vehicles, signage, and placards;

   c.  purchase or obtain digital advertising that utilizes the HASSLE FREE mark to promote, advertise, market, sale, offer or in association with the offer of plumbing services or equivalent services or products;

   d.  identify themselves as an entity and/or as a source of plumbing services or equivalent services or products that incorporates, either in whole or in part, the HASSLE FREE mark;

   e.  obtain and/or maintain any social media accounts or make posts on any social media platform that utilizes, either in whole or in part, the HASSLE FREE mark;

   f.  post or submit to any websites and/or domains owned, operated, and/or that the Enjoined Parties have at least partial control of the content posted to, content that utilizes, either in whole or in part, the HASSLE FREE mark;

g.  make statements to consumers or the public which would disparage Plaintiff, its HASSELL FREE PLUMBING™ trademark and/or its brand including

 i.   statements that indicate Plaintiff is going about of business;

 ii.   statements that indicate Plaintiff sold its business;

 iii.   statements that indicate Plaintiff has relocated;

 iv.   statements that indicate the Enjoined Parties are affiliated with Plaintiff;

 v.   statements that indicate Plaintiff is not accepting new projects or customers;

 vi.   statements that suggest Plaintiff's services are of substandard quality;

 vii.   statements that suggest Plaintiff's business practices are substandard;

 viii.   statements that suggest Plaintiff's reputation is substandard;

2.   The Enjoined Parties shall

a.  cancel, stop, and/or take all reasonable steps to cease or stop any and all marketing campaigns currently initiated and/or pending by the Enjoined Parties that utilizes, in whole or in part, the HASSLE FREE mark;

20

b.  remove, delete, cancel and/or erase all content previously submitted or posted to any and all social media platforms that utilizes, either in whole or in part, the HASSLE FREE mark;

c.  remove, erase, permanently cover or hide, any and all displays of the HASSLE FREE mark that were previously affixed to a physical object by the Enjoined Parties that has the potential to be viewed by the public, including but not limited to, billboards, vehicles, signage, and placards;

d.  remove, delete, cancel and/or erase all content previously submitted or posted to any and all websites and domains owned, operated, and/or that the Enjoined Parties have at least partial control of the content posted to, content that utilizes, either in whole or in part, the HASSLE FREE mark;

e.  post a disclaimer to the https://www.roysecitygaslinerepair.com domain that is prominent and provides sufficient notice to the public that the owner of said domain is in no way affiliated with Plaintiff;

f.  take all reasonable steps to informal and/or provide notice to all current and former clients who obtained and/or received Defendant's services from the date that Defendant began utilizing the HASSLE FREE mark in connection with plumbing services that the Defendant is no way associated with Plaintiff; and it is further

ORDERED that Defendant shall file with the Court and serve on Plaintiff within thirty (30) days after entry of such injunction a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction as provided 15 U.S.C. § 1116(a).

## IV. Conclusion

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion for Default Judgment and Permanent Injunction is **GRANTED**. It is further **ORDERED** that **within fourteen (14) days of the date of this order** Plaintiff shall submit supplemental materials, including an affidavit from its counsel setting out the details that establish a reasonable calculation of attorneys' fees, and such other evidence establishing proof under the Fifth Circuit's standards. The Court will enter the final judgment separately.

**SO ORDERED.**

Signed on March 25th, 2021.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE